UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXIS MONTERO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MOUNT VERNON, NEW YORK; and DEBORAH REYNOLDS, in her official capacity as Comptroller for the City of Mount Vernon, New York,<br><br>Defendants. | **DECLARATION OF BRIAN J. LaCLAIR IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**<br><br>No. 7:21-CV-1924-NSR |

I, BRIAN J. LaCLAIR, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner in the law firm of Blitman & King LLP, counsel for Plaintiff in the above-captioned action. I submit this declaration in support of Plaintiffs' unopposed motion for an order approving the parties' settlement of the above-captioned collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*

2. The matter presently before the Court is Plaintiffs' unopposed motion pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for an order approving the parties' settlement of this collective action. This declaration is submitted in support of that motion.

3. Named Plaintiff Alexis Montero ("Montero") is employed by Defendant City of Mount Vernon, New York ("City") as a nonexempt Sewer Maintainer in its Department of Public Works ("DPW").

4. On March 5, 2021, Montero filed this FLSA collective action against the City and Defendant Deborah Reynolds, in her official capacity as Comptroller of the City of Mount Vernon, New York ("Reynolds") (collectively, "Defendants"), alleging that starting in or about September 2020, the City engaged in a pattern or practice or not timely paying earned overtime compensation to him and his fellow DPW workers. *See* Compl. (Dkt. No. 1). Defendants filed an answer generally denying said allegations. *See* Answer (Dkt. No. 14).

5. On October 18, 2021, the Court "so ordered" the parties' tolling agreement whereby the statute of limitations for Montero and members of the putative collective were tolled and discovery stayed to allow the parties time to work toward settlement of the action. Stip. & Tolling Agmt., so ordered on Oct. 18, 2021 (Dkt. No. 21). The tolling agreement and stay were extended several times through July 13, 2022. *See* Dkt. Nos. 23, 25, 27.

6. On November 9, 2022, the Court "so ordered" the parties' stipulation to conditional certification of a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Stipulation and Order, executed on Nov. 9, 2022 (Dkt. No. 31). The collective was defined as "All hourly non-exempt employees of Defendant City's Department of Public Works who, since September 1, 2020, worked in excess of 40 hours during one or more workweeks and have a good faith belief that they did not receive the overtime compensation to which they were entitled on their regular pay day for the period in which the overtime hours were worked" ("Collective"). *Id.*

7. The parties stipulated, and the Court agreed, that Montero and the members of the Collective were similarly situated because they were all nonexempt hourly employees of the City's DPW who were subject to common timekeeping and payroll practices that resulted in

the alleged untimely overtime payments.  *Id.*  In addition, the parties and Court agreed that Montero and the members of the Collective suffered the same type of alleged injury in the form of late-paid overtime compensation, and shared similar issues of and fact material to the disposition of their FLSA claims.  *Id.*

8.      After a conference with Magistrate Judge Davison held on November 21, 2022, the parties submitted and the Court "so ordered" an amended stipulation granting conditional certification and approving a notice to send to the members of the Collective.  *See* Dkt. Nos. 40, 41.  In addition to some minor changes to the original stipulation proposed by the Court, the parties sought to amend the definition of the Collective in order to include an end date since the parties had determined by that time that the pattern of allegedly untimely overtime payments had ceased in or about May of 2021.  Dkt. No. 41.

9.      Thereafter, the Court-approved notice and consent form was sent to the members of the Collective.  After the parties agreed and the Court approved a short extension of the opt-in period (Dkt. No. 89), 55 members of the Collective filed consents to become party plaintiffs in this action ("Opt-In Plaintiffs").  *See* Dkt. Nos. 42-82, 84-88, 90-94, 96, 98-100.  In so doing, the 55 Opt-In Plaintiffs agreed as follows: "*By executing and returning this Consent, I hereby designate the Representative Plaintiff, Alexis Montero, and any other person who hereafter becomes a Representative Plaintiff, as my agents to make decisions on my behalf concerning this Fair Labor Standards Act litigation against Defendants, including, but not limited to, the method and manner of conducting this litigation, whether to enter into settlement agreements, and whether to enter into agreements with Representative Plaintiff's counsel*

*concerning attorneys' fees and costs. I understand that upon the filing of this consent, I will be bound by the decisions made and agreements entered into by the Representative Plaintiff."*

10. Both prior to and after the 55 Opt-In Plaintiffs joined the action, the parties were engaged in both informal and formal discovery. Initially, Defendants produced detailed time and pay records for Montero. Later, Defendants produced detailed and voluminous time and pay records for all 55 Opt-In Plaintiffs. Numerous follow-up and supplemental requests for relevant records were made by Plaintiffs and responded to by Defendants. All told, Defendants produced and Plaintiffs reviewed and analyzed approximately 2,500 pages of records related to the alleged late-overtime payments.

11. The records produced by Defendants indicated a pattern of allegedly late overtime payments from approximately October 2020 to May 2021, whereby Plaintiffs worked overtime but did not receive compensation for that overtime until multiple weeks later. While the records indicated that Plaintiffs ultimately received the overtime compensation to which they were entitled during this period, Plaintiffs were still legally entitled to pursue liquidated damages in an amount equal to the allegedly late payments he or she received.

12. The records produced by Defendants allowed Plaintiffs to determine the number and amount of late overtime payments that Montero and each of the Opt-In Plaintiffs received—and, thus, the amount of liquidated damages to which they were arguably entitled. Accordingly, this information allowed the parties to intelligently assess the merits of their respective claims and defenses and engage in meaningful settlement negotiations.

13. After more than two months of negotiations and the exchange of several demands and counteroffers, the parties reached an agreement in principle to settle the matter

on behalf of Montero and the 55 Opt-In Plaintiffs.  Plaintiffs successfully negotiated a recovery of $206,865.06 for Montero and the Opt-In Plaintiffs, which amounts to at least 75% of their maximum possible recovery.  Plaintiffs also negotiated 100% liquidated damages (i.e., not reduced to 75%) for several Opt-In Plaintiffs with less than $600 in alleged liquidated damages, and minimum payments of $150 for several Opt-In Plaintiffs whose good faith belief that they had received late overtime payments during the relevant period were not borne out by the records.

14. A portion of the alleged late payments upon which the liquidated damages are based, particularly those paid on March 8, 2021, arguably contained both timely and untimely overtime compensation; thus, it is not clear that Plaintiffs would be entitled to recover liquidated damages for the entirety of such late payments.  Assuming, for the sake of argument, that Plaintiffs would not be entitled to recover those amounts, the Settlement provides for closer to 90% of their maximum possible recovery.

15. Separately, Plaintiffs proposed that, in addition to the $206,865.06, Defendants reimburse Plaintiffs' counsel for attorney's fees and costs pursuant to the FLSA's mandatory fee-shifting provision.  The parties agreed that Defendants would pay an additional $55,000 as reimbursement for Plaintiffs' attorney's fees and costs.

16. The parties executed a Stipulation of Settlement ("Settlement") on February 16, 2024.  Attached hereto as a "Exhibit 1" is a true and correct copy of the Stipulation of Settlement with exhibits.

17. The Settlement contains an appropriately narrow release of claims, which is limited to "any and all claims, liabilities and causes of action under the Fair Labor Standards Act arising out of the events set forth in the Complaint in the above-captioned Action." Ex. 1 ¶ 3.

18. Moreover, pursuant to the Settlement, "[w]ithin 14 days of the issuance of a court order approving the Settlement, Defendant City will mail checks in the amounts specified on Exhibit A, along with a notice substantially in the form of the notice attached hereto as Exhibit B, to Named Plaintiff Montero and the Opt-In Plaintiffs." Ex. 1 ¶ 6.

19. The proposed notice attached as Exhibit B to the Settlement explains to the Opt-In Plaintiffs the terms of the Settlement and makes clear that each Opt-In Plaintiff has the option of negotiating the check and agreeing to the release, or abstaining from negotiating their check and retaining their right to pursue their claims separately. Ex. 1. The Settlement also gives Plaintiffs up to 90 days to deposit their checks, and an additional 60 days after that to request the re-issuance of their checks. Ex. 1 ¶ 6.

20. Continued litigation would involve significant risks for Plaintiffs as to both liability and damages. Although Plaintiffs are confident that they would ultimately prove liability against Defendants, doing so would require additional factual development, and favorable outcomes at the summary judgment stage, collective action decertification motion stage, trial, and on appeal. Proceeding on the merits would involve significant risks for Plaintiffs due to the somewhat undeveloped body of case law concerning late-paid overtime in the Second Circuit.

21. Additionally, Defendants have communicated an intention to dispute the amount of overtime hours worked by Plaintiffs to the extent not properly documented or

timely submitted by Plaintiffs.  This is potentially precarious for Plaintiffs given that during this stage of the COVID-19 pandemic, Plaintiffs were manually submitting handwritten timesheets instead of using the Defendants' mechanized time keeping system.  *See* Dkt. No. 41 ¶ 8 (reflecting Defendants' reservation of rights concerning the position that they did not timely receive actual or constructive notice of overtime hours worked by Plaintiffs due to the impact of COVID-19 and temporary changes to the timekeeping procedures).

22. Counsel representing the parties in this matter are experienced in wage-and-hour and employment disputes, and Plaintiffs' counsel has significant experience representing employees in complex class and collective action litigation.

23. Blitman & King LLP was founded approximately ninety years ago and concentrates its practice in labor, employment, and employee benefits matters. I ("BJL") am a partner in Blitman & King LLP and have been associated with the firm since 2009.  I graduated from the University of Rochester (B.A., History) and the Syracuse University College of Law (J.D., magna cum laude).  From 2006 to 2008 I served as Law Clerk to the Honorable David N. Hurd, United States District Judge for the Northern District of New York.  I was admitted to the bar of the State of New York in 2007, and was thereafter admitted to the United States Supreme Court, the United States Court of Appeals for the Second Circuit, as well as to the United States District Courts for the Eastern, Southern, Northern, and Western Districts of New York.  My background and experience includes practice before state and federal courts in connection with various legal actions, including class actions involving state and federal wage and hour law litigation.

24. Partner Bryan T. Arnault ("BTA") has been associated with the firm since 2010. Attorney Arnault is a graduate of Binghamton University (B.A., magna cum laude, 2007) and Boston University School of Law (J.D., cum laude, 2010). He was admitted to the Massachusetts and New York bars in 2011 and Pennsylvania bar in 2018. His background and experience includes practice before administrative agencies, including the National Labor Relations Board, labor arbitration tribunals, and state and federal courts in connection with various labor and employment actions.

25. Blitman & King LLP's former associate Benjamin M. Burdick ("BMB"), who also performed work on this case, graduated from New York University (B.A., Physics), Perimeter Institute (M.S., Theoretical Physics), and Berkeley School of Law (J.D.). He was admitted to the bar of the State of New York in 2021.

26. The parties have devoted significant time and resources to identifying, investigating, prosecuting/defending, and settling the legal claims in this action. The parties have worked diligently over a significant period of time to negotiate a fair resolution, even negotiating a tolling agreement to ensure that Plaintiffs' rights were not adversely impacted while they did so.

27. Since this matter first arose three years ago, Plaintiffs' counsel has expended more than 237 attorney hours working on this case, including approximately 175 partner hours and 62 associate hours. Notably, these hours are based on a report run on February 6, 2024, and thus do not capture additional attorney hours expended since that date. In addition, these hours do not account for future attorney time that will be spent on this matter in administering the Settlement. Counsel has also incurred $715.61 in costs.

28. Counsel has maintained detailed and contemporaneous records of the time it has spent pursuing this action using time-keeping and billing software licensed from ProVantage Software, Inc. Submitted simultaneously for the Court's *in camera* review, is a report exported from the ProVantage software showing those time records.

29. Counsel's hourly rates for partners and associates for employment litigation matters such as this one are $425 and $275, respectively.

30. Accordingly, the lodestar amount for this case is more than $91,000. However, in order to reach a settlement that is highly favorable to the Plaintiffs, counsel has agreed to the substantially reduced amount of $55,000 for attorney's fees and costs. This amounts to only 60% of the lodestar amount. Moreover, while this is not a percentage-of-the-fund case, the requested fee is also more than reasonable when compared to the total amount paid by Defendants as part of the Settlement. Specifically, the requested fee of $55,000 amounts to only 21% of the $261,865.06 that Defendants have agreed to pay to settle this action.

31. Respectfully, Plaintiffs submit that the Settlement, including the request for attorney's fees and costs, are fair and reasonable and should be approved by the Court.

32. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: February 29, 2024
         Syracuse, New York

                                                          Brian J. LaClair