UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXIS MONTERO, individually and on behalf
of all others similarly situated,

                Plaintiff,

                v.

CITY OF MOUNT VERNON, NEW YORK; and
DEBORAH REYNOLDS, in her official capacity
as Comptroller for the City of Mount Vernon,
New York,

                Defendants.

No. 7:21-CV-1924-NSR

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

**BLITMAN & KING LLP**
Brian J. LaClair (BL3158)
*Attorneys for Plaintiffs*
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204
(315) 422-7111
bjlaclair@bklawyers.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY .................................................................................................. 1

ARGUMENT ...................................................................................................................... 6

POINT I   THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS FAIR
AND REASONABLE ..................................................................................... 6

      A.   Plaintiffs Will Receive a Substantial Portion of Their Maximum
Possible Recovery .................................................................................. 7

      B.   The Settlement Will Enable the Parties to Avoid Significant Burdens
and Expenses in Establishing Their Claims and the Risks of Continued
Litigation ................................................................................................. 9

      C.   The Settlement is the Product of Arm's-Length Negotiations Between
Experienced Counsel and There is No Possibility of Fraud or Collusion... 11

      D.   The Settlement Does Not Provide For Overbroad Releases or
Stringent Confidentiality Provisions ...................................................... 12

      E.   The Settlement is Procedurally Appropriate Concerning the
Opt-In Plaintiffs ..................................................................................... 12

POINT II  THE COURT SHOULD ALSO APPROVE THE REQUESTED ATTORNEY'S FEES
AND COSTS BECAUSE THEY TOO ARE FAIR AND REASONABLE ........................ 14

CONCLUSION ................................................................................................................. 17

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981) ............................................... 15

*Belizaire v. RAV Investigative & Sec. Servs.*, 61 F. Supp. 3d 336 (S.D.N.Y. 2014)..................... 8, 10

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ......................................................... 8

*Chavarria v. N.Y. Airport Servs.*, 875 F. Supp. 2d 164 (E.D.N.Y. 2012).......................................... 10

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ............................... 7, 12, 14

*Dougherty v. 2With Deli Corp.*, No. 23-CV-03496 (ER), 2023 U.S. Dist. LEXIS 215998
    (S.D.N.Y. Dec. 5, 2023) .......................................................................................... 16

*Feliciano v. Metro. Transp. Auth.*, No. 18-CV-26, 2020 U.S. Dist. LEXIS 80212
    (S.D.N.Y. May 6, 2020) ........................................................................................... 14

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290 (E.D.N.Y. 2015) .................. 9

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-CV-8472, 2013 U.S. Dist. LEXIS 42681
    (S.D.N.Y. Mar. 21, 2013)........................................................................................... 11

*Hood v. Uber Techs., Inc.*, No. 16-CV-998, 2019 U.S. Dist. LEXIS 670 (M.D.N.C. Jan. 3, 2019) ..... 13

*Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010)............................ 15

*Lazo v. Kim's Nails at York Ave. Inc.*, No. 17-CV-3302 (AJN), 2018 U.S. Dist. LEXIS 218107
    (S.D.N.Y. Jan. 2, 2019) ............................................................................................ 17

*Mercado v. Metro. Transp. Auth.*, No. 20-CV-6533, 2023 U.S. Dist. LEXIS 115254
    (S.D.N.Y. July 5, 2023) ...................................................................................... 14, 16

*Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234, 2013 U.S. Dist. LEXIS
    134207 (E.D.N.Y. Sept. 19, 2013)............................................................................. 11

Raniere v. Citigroup Inc., 310 F.R.D. 211 (S.D.N.Y. 2015) ................................................. 9

*Rogers v. City of Troy*, 148 F.3d 52 (2d Cir. 1998)............................................................ 7

*Romero v. La Revise Assocs., LLC*, 58 F. Supp. 3d 411 (S.D.N.Y. 2014) ......................................... 9

Siddiky v Union Sq. Hosp. Group, LLC, No. 15-CV-9705, 2017 U.S. Dist. LEXIS 75301
    (S.D.N.Y. May 17, 2017) ............................................................................................ 9

*Stock v. Xerox Corp.*, 516 F. Supp. 3d 308 (W.D.N.Y. 2021).......................................................... 13

*Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-CV-6094, 2014 U.S. Dist. LEXIS 132186
    (S.D.N.Y. Sept. 19, 2014 ............................................................................................ 9

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ...............................6, 7, 9, 11, 14

**TABLE OF AUTHORITIES (Cont.)**

**Page**

**Statutes**

FLSA 29 U.S.C. § 216(b) ........................................................................................................ 1, 2, 5

FLSA 29 U.S.C. §§ 201.............................................................................................................. 1, 2

## INTRODUCTION

This collective action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. The matter presently before the Court is Plaintiffs' unopposed motion pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for an order approving the parties' settlement of this collective action.

As explained in more detail below, the parties' settlement is fair and reasonable. Plaintiffs allege that they are entitled to liquidated damages under the FLSA for certain late overtime payments received from approximately October 2020 to May 2021 during the COVID-19 pandemic. The settlement provides at least 75% of the maximum possible recovery to the named plaintiff and 55 opt-in plaintiffs and allows them to avoid the many risks associated with continued litigation. This memorandum of law is submitted in support of their motion for approval of the settlement.

## PROCEDURAL HISTORY

Named Plaintiff Alexis Montero ("Montero") is employed by Defendant City of Mount Vernon, New York ("City") as a nonexempt Sewer Maintainer in its Department of Public Works ("DPW"). Declaration of Brian J. LaClair, executed on February 29, 2024 ("LaClair Decl.") ¶ 3; *see* Compl. (Dkt. No. 1). On March 5, 2021, Montero filed this collective action against the City and Defendant Deborah Reynolds, in her official capacity as Comptroller of the City of Mount Vernon, New York ("Reynolds") (collectively, "Defendants")[1] for violations of the Fair Labor

---

[1] On January 1, 2022, Darren Morton assumed the office of City Comptroller. By operation of Rule 25(d) of the Federal Rules of Civil Procedure, "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending." Rather, "[t]he officer's successor is automatically substituted as a party." *Id.*

Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq. Id.* ¶ 4; *see* Compl. (Dkt. No. 1).

Specifically, Montero alleged that in or about September 2020, the City engaged in a pattern or

practice or not timely paying earned overtime compensation to him and his fellow DPW

workers. *Id.* Defendants filed an answer generally denying said allegations. *Id.*; *see* Answer

(Dkt. No. 14).

On October 18, 2021, the parties reached, and the Court "so ordered," a tolling

agreement whereby the statute of limitations for Montero and members of the putative

collective were tolled and discovery stayed to allow the parties time to work toward settlement

of the action. *Id.* ¶ 5; Stip. & Tolling Agmt., so ordered on Oct. 18, 2021 (Dkt. No. 21). The

tolling agreement and stay were extended several times through July 13, 2022. *Id.*; *see* Dkt.

Nos. 23, 25, 27.

On November 9, 2022, the Court "so ordered" the parties' stipulation to conditional

certification of a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Id.

¶ 6. Stipulation and Order, executed on Nov. 9, 2022 (Dkt. No. 31). The collective was defined

as "All hourly non-exempt employees of Defendant City's Department of Public Works who,

since September 1, 2020, worked in excess of 40 hours during one or more workweeks and

have a good faith belief that they did not receive the overtime compensation to which they

were entitled on their regular pay day for the period in which the overtime hours were worked"

("Collective"). *Id.*

The parties stipulated, and the Court agreed, that Montero and the members of the

Collective were similarly situated because they were all nonexempt hourly employees of the

City's DPW who were subject to common timekeeping and payroll practices that resulted in the

alleged untimely overtime payments. *Id.* ¶ 7; Dkt. No. 31. In addition, the parties and Court agreed that Montero and the members of the Collective suffered the same type of alleged injury in the form of late-paid overtime compensation, and shared similar issues of and fact material to the disposition of their FLSA claims. *Id.* After a conference with Magistrate Judge Davison held on November 21, 2022, the parties submitted and the Court "so ordered" an amended stipulation granting conditional certification and approving a notice to send to the members of the Collective. *Id.* ¶ 8; Dkt. Nos. 40, 41. In addition to some minor changes to the original stipulation proposed by the Court, the parties sought to amend the definition of the Collective in order to include an end date since Defendants' records indicated that the pattern of allegedly untimely overtime payments had by then been corrected. *Id.*

Thereafter, the Court-approved notice and consent form was sent to the members of the Collective. *Id.* ¶ 9. After the parties agreed and the Court approved a short extension of the opt-in period (Dkt. No. 89), 55 members of the Collective filed consents to become party plaintiffs in this action ("Opt-In Plaintiffs"). *Id.*; *see* Dkt. Nos. 42-82, 84-88, 90-94, 96, 98-100. In so doing, the 55 Opt-In Plaintiffs agreed as follows:

> *By executing and returning this Consent, I hereby designate the Representative Plaintiff, Alexis Montero, and any other person who hereafter becomes a Representative Plaintiff, as my agents to make decisions on my behalf concerning this Fair Labor Standards Act litigation against Defendants, including, but not limited to, the method and manner of conducting this litigation, whether to enter into settlement agreements, and whether to enter into agreements with Representative Plaintiff's counsel concerning attorneys' fees and costs. I understand that upon the filing of this consent, I will be bound by the decisions made and agreements entered into by the Representative Plaintiff.*

*Id.*

Both prior to and after the 55 Opt-In Plaintiffs joined the action, the parties were engaged in both informal and formal discovery. *Id.* ¶ 10. Initially, Defendants produced detailed time and pay records for Montero. *Id.* Later, Defendants produced detailed and voluminous time and pay records for all 55 Opt-In Plaintiffs. *Id.* Numerous follow-up and supplemental requests for relevant records were made by Plaintiffs and responded to by Defendants. *Id.* All told, Defendants produced and Plaintiffs reviewed and analyzed approximately 2,500 pages of records related to the alleged late-overtime payments. *Id.*

The records produced by Defendants indicated a pattern of allegedly late overtime payments from approximately October 2020 to May 2021, whereby Plaintiffs worked overtime but did not receive compensation for that overtime until multiple weeks later. *Id.* ¶ 11. The records indicated that the pattern of allegedly late overtime payments was corrected after May 2021. *Id.* Thus, while the records indicated that Plaintiffs ultimately received the overtime compensation to which they were entitled during this period, Plaintiffs alleged that they were still entitled to the payment of liquidated damages in an amount equal to the allegedly late payments he or she received. *Id.*[2]

This information allowed the parties to intelligently assess the merits of their respective claims and defenses and engage in meaningful settlement negotiations. *Id.* ¶ 12. After more than two months of negotiations and the exchange of several demands and counteroffers, the parties reached an agreement in principle to settle the matter on behalf of Montero and the

---

[2] Each Plaintiff alleged varying amounts of liquidated damages because each Plaintiff worked varying amount so overtime during the relevant period and, thus, received varying amounts of allegedly late overtime payments.

55 Opt-In Plaintiffs. *Id.* ¶ 13.  Plaintiffs negotiated a recovery of $206,865.06 for Montero and

the Opt-In Plaintiffs, which is comprised of 75% of the amount of arguably late overtime

payments received by each Plaintiff during the relevant period. *Id.*[3]  Plaintiffs also negotiated

100% liquidated damages (i.e., not reduced to 75%) for several Opt-In Plaintiffs with less than

$600 in alleged liquidated damages, and minimum payments of $150 for several Opt-In

Plaintiffs whose good faith belief that they had received late overtime payments during the

relevant period were not borne out by the records. *Id.*

Separately, Plaintiffs proposed that, in addition to the $206,865.06, Defendants

reimburse Plaintiffs' counsel for attorney's fees and costs pursuant to the FLSA's mandatory

fee-shifting provision. *Id.* ¶ 15; *see* 29 U.S.C. § 216(b) ("The court in such action shall, in

addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's

fee to be paid by the defendant, and costs of the action.").  The parties agreed that Defendants

would pay an additional $55,000 as reimbursement for Plaintiffs' attorney's fees and costs. *Id.*

As explained in more detail below, this amounts to only 60% of the lodestar amount and only

21% of the total settlement recovery.

On February 16, 2024, the parties executed a Stipulation of Settlement ("Settlement")

reflecting these terms.  LaClair Decl. ¶ 16, Ex. 1.  The Settlement also provides for a narrow

release of claims limited to "any and all claims, liabilities and causes of action under the Fair

---

[3] A portion of the alleged late payments upon which the liquidated damages are based arguably
contained both timely and untimely overtime compensation. *Id.* ¶ 14.  Thus, it is not clear that
Plaintiffs would be entitled to recover liquidated damages for the entirety of such late
payments. *Id.*  Assuming, for the sake of argument, that Plaintiffs would not be entitled to
recover those amounts, the settlement provides for closer to 90% of their maximum possible
recovery. *Id.*

Labor Standards Act arising out of the events set forth in the Complaint in the above-captioned

Action." *Id.*, Ex. 1 ¶ 3.  Pursuant to the Settlement, "[w]ithin 14 days of the issuance of a court

order approving the Settlement, Defendant City will mail checks in the amounts specified on

Exhibit A, along with a notice substantially in the form of the notice attached hereto as

Exhibit B, to Named Plaintiff Montero and the Opt-In Plaintiffs." *Id.*, Ex. 1 ¶ 6.  The notice

explains to Opt-In Plaintiffs the terms of the Settlement and makes clear that each Opt-In

Plaintiff has the option of negotiating the check and agreeing to the release, or abstaining from

negotiating their check and retaining their right to pursue their claims separately.  *Id.*, Ex. 1.

The Settlement also gives Plaintiffs up to 90 days to deposit their checks, and an additional 60

days after that to request the re-issuance of their checks.  *Id.*, Ex. 1 ¶ 6.

Plaintiffs now ask this Court—without opposition and with Defendants' consent—to

approve the Settlement as fair and reasonable.

## ARGUMENT

### POINT I

### THE COURT SHOULD APPROVE THE SETTLEMENT
### BECAUSE IT IS FAIR AND REASONABLE

To assess the reasonableness of the Settlement, the Court must consider the totality of

the circumstances including, but not limited to, examining the five so-called *Wolinsky* factors:

(1) Plaintiffs' range of possible recovery; (2) the extent to which the Settlement will enable the

parties to avoid anticipated burdens and expenses in establishing their respective claims and

defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the

Settlement is the product of arm's-length negotiations between experienced counsel; and (5)

the possibility of fraud or collusion.  Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335-36

(S.D.N.Y. 2012).  Additionally, courts scrutinize the "admonitions" set forth in Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015)—specifically, that overbroad releases and stringent confidentiality provisions are to be avoided.  As detailed below, the Settlement is reasonable under each of the five Wolinsky factors and also complies with the admonitions referenced in Cheeks.

      **A.**      **Plaintiffs Will Receive a Substantial Portion of Their Maximum Possible Recovery**

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable because Plaintiffs will receive a substantial portion—at least 75%—of the maximum possible recovery that they would obtain if they litigated this matter through trial.

The damages in this case arise from allegations that Defendants made late payments of overtime compensation to the City's DPW employees during the COVID-19 pandemic. Specifically, Plaintiffs allege that starting around September 2020, they worked overtime but did not receive the corresponding overtime compensation on their regular pay day.  *See* Compl. (Dkt. No. 1).  During discovery and settlement negotiations, Defendants produced Plaintiffs' time and pay records showing a pattern of late-paid overtime compensation between approximately October 2020 and May 2021.  LaClair Decl. ¶¶ 10-11.  During that period, Plaintiffs were ultimately paid for the overtime they worked but the corresponding overtime compensation they received was arguably untimely.  *Id.*

"[T]he FLSA requires wages to be paid in a timely fashion."  *Rogers v. City of Troy*, 148 F.3d 52, 57 (2d Cir. 1998).  This "prompt payment requirement" is implicit in the statute.  *Id.* at 59.  As the *Rogers* court noted, the Supreme Court has held that a plaintiff was entitled to liquidated damages "despite the fact that he had been paid his full wages prior to instituting his

lawsuit." *Id.* at 56 (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945)).  Federal regulations provide that "[t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."  29 C.F.R. § 778.106.  However, "the Second Circuit has not provided a specific, objective framework under which to analyze [late-paid overtime] claims."  Belizaire v. RAV Investigative & Sec. Servs., 61 F. Supp. 3d 336, 359 (S.D.N.Y. 2014).

Based on the above law concerning late-paid overtime compensation, Plaintiffs allege that they are entitled to liquidated damages equal to 100% of the amount of arguably late-paid overtime compensation they received during the period October 2020 to May 2021.  LaClair Decl. ¶ 11.[4]  (Defendants have denied those allegations.)  The Settlement provides for at least 75% of the maximum possible recovery based on the time and pay records produced by Defendants.  *Id.* ¶ 13.[5]  The Settlement also provides for 100% liquidated damages (i.e., not reduced to 75%) for several Opt-In Plaintiffs with less than $600 in alleged liquidated damages, and minimum payments of $150 for several Opt-In Plaintiffs for whom the records showed no late payment of overtime.  *Id.*

---

[4] As reflected on Exhibit A to the Settlement Agreement (*see* LaClair Decl., Ex. 1), each Plaintiff received varying amounts of allegedly untimely overtime compensation during the relevant period because they worked varying amounts of overtime.  As such, each Plaintiff's proposed settlement payment is different because their alleged liquidated damages are necessarily derived from those varying amounts.  *Id.*

[5] As noted above, a portion of the alleged late payments upon which the liquidated damages are based arguably contained both timely and untimely overtime compensation, which, if discounted would mean that the Settlement provides for closer to 90% of Plaintiffs' maximum possible recovery.  *Id.*

This recovery reflects a reasonable compromise and well exceeds recovery percentages recently approved in other wage-and-hour settlements within this District.  See Raniere v. Citigroup Inc., 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); Siddiky v Union Sq. Hosp. Group, LLC, No. 15-CV-9705, 2017 U.S. Dist. LEXIS 75301, at *16-17 (S.D.N.Y. May 17, 2017) (approving 23% recovery of plaintiffs' maximum possible recovery); Trinidad v. Pret a Manger (USA) Ltd., No. 12-CV-6094, 2014 U.S. Dist. LEXIS 132186, at *20 (S.D.N.Y. Sept. 19, 2014) (approving FLSA class settlement of 20-25% of maximum recovery).

Accordingly, the Settlement is fair and reasonable because Plaintiffs will receive a substantial portion of the maximum possible recovery that they would obtain if they litigated this matter through trial.

### B.  The Settlement Will Enable the Parties to Avoid Significant Burdens and Expenses in Establishing Their Claims and the Risks of Continued Litigation

The second and third Wolinsky factors are met because both parties will avoid the significant expense of continued discovery, motion practice, expert discovery, and the risk of a potentially lengthy, fact-intensive trial.  Continued litigation would result in additional expense associated with additional written discovery, depositions, expert discovery, motion practice, trial, and possible appeal.  In assessing the Wolinsky factors, courts have properly recognized that further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs."  Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); see Romero v. La Revise Assocs., LLC, 58 F. Supp. 3d 411, 420-21

(S.D.N.Y. 2014) ("the fact-intensive nature of [plaintiffs' FLSA] claims mean that litigation would likely be lengthy, complex, and expensive").

Despite the strengths of Plaintiffs' case, they recognize that "[l]itigation inherently involves risks." *Chavarria v. N.Y. Airport Servs.*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (internal quotation marks omitted). Continued litigation would involve significant risks for Plaintiffs as to both liability and damages. LaClair Decl. ¶ 20. Although Plaintiffs are confident that they would ultimately prove liability against Defendants (while Defendants are confident they would prevail on their defenses), doing so would require additional factual development, and favorable outcomes at the summary judgment stage, collective action decertification motion stage, trial, and on appeal. *Id.* Proceeding on the merits would involve significant risks for Plaintiffs due to the somewhat undeveloped body of case law concerning the late-paid overtime claims. *Id.*; *see Belizaire*, 61 F. Supp. 3d at 359 ("[T]he Second Circuit has not provided a specific, objective framework under which to analyze [late-paid overtime] claims.").

Additionally, Defendants have communicated an intention to dispute the amount of overtime hours worked by Plaintiffs to the extent not properly documented or timely submitted by Plaintiffs. *Id.* ¶ 21. This is potentially precarious for Plaintiffs given that during this stage of the COVID-19 pandemic, Plaintiffs were manually submitting handwritten timesheets instead of using the Defendants' mechanized time keeping system. *Id.*; Dkt. No. 41 ¶ 8 (reflecting Defendants' reservation of rights concerning the position that they did not timely receive actual or constructive notice of overtime hours worked by Plaintiffs due to the impact of COVID-19 and temporary changes to the timekeeping procedures).

The Settlement, however, would alleviate the inherent uncertainty of litigating this matter through trial.  As such, these factors weigh in favor of approval.

**C.    The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel and There is No Possibility of Fraud or Collusion**

The fourth and fifth *Wolinsky* factors—whether the Settlement is the product of arm's-length negotiations and whether there is a possibility of fraud or collusion—also support a conclusion that the Settlement is fair and reasonable.  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-CV-8472, 2013 U.S. Dist. LEXIS 42681, at *20 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234, 2013 U.S. Dist. LEXIS 134207, at *2 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted).

Counsel representing the parties in this matter are experienced in wage-and-hour and employment disputes, and Plaintiffs' counsel has significant experience representing employees in complex class and collective action litigation.  LaClair Decl. ¶ 22.  Plaintiffs' counsel Blitman & King LLP was founded ninety years ago and concentrates its practice in labor, employment, and employee benefits matters.  *Id.*  Plaintiff's Counsel are qualified, experienced, and competent, having substantial experience with the substantive law applicable to this action, as well as with collective and class litigation generally.  *Id.* ¶ 23.  Counsel for Defendants is also experienced in litigation matters, including wage-and-hour disputes, and is more than qualified, experienced and competent with the subject matter of this action.

Moreover, the parties have devoted significant time and resources to identifying, investigating, prosecuting/defending, and settling the legal claims in this action. *Id.* ¶¶ 26-27. The parties have worked diligently over a significant period of time to negotiate a fair resolution, even negotiating a tolling agreement to ensure that Plaintiffs' rights were protected while they did so. *Id.*; Dkt. Nos. 21, 23, 25, 27. The parties' good-faith, arm's-length negotiations in this case demonstrate that there is no possibility of fraud or collusion. For these additional reasons, the Settlement is fair and reasonable, and should be approved.

**D.     The Settlement Does Not Provide For Overbroad Releases or Stringent Confidentiality Provisions**

As noted above, courts scrutinize the "admonitions" set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)—specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. Neither such defect exists in this case. To be sure, the Settlement in this case provides for an appropriately narrow release of claims, which is limited to "any and all claims, liabilities and causes of action under the Fair Labor Standards Act arising out of the events set forth in the Complaint in the above-captioned Action." LaClair Decl., Ex. 1 ¶ 3. Moreover, the Settlement does not contain any confidentiality provisions. As such, the parties properly heeded the court's admonitions in *Cheeks*. *Id.*

**E.     The Settlement is Procedurally Appropriate Concerning the Opt-In Plaintiffs**

This Court has conditionally certified this matter as a collective action. Dkt. No. 41. This was based on the parties' stipulation that Plaintiffs are similarly situated and properly part of a collective action under the FLSA. *Id.* Indeed, they are all hourly employees of the City's DPW who were impacted by the pattern of allegedly late overtime payments that affected that department from approximately October 2020 to May 2021. In addition to Named Plaintiff

Montero, the 55 Opt-In Plaintiffs affirmatively consented to join this action as party plaintiffs.

They did so by executing a "Consent to Become a Party Plaintiff" forms approved by the Court,

which expressly states as follows:

> By executing and returning this Consent, I hereby designate the
> Representative Plaintiff, Alexis Montero, and any other person who hereafter
> becomes a Representative Plaintiff, as my agents to make decisions on my
> behalf concerning this Fair Labor Standards Act litigation against Defendants,
> including, but not limited to, the method and manner of conducting this
> litigation, whether to enter into settlement agreements, and whether to enter
> into agreements with Representative Plaintiff's counsel concerning attorneys'
> fees and costs. I understand that upon the filing of this consent, I will be
> bound by the decisions made and agreements entered into by the
> Representative Plaintiff.

*See* Dkt. Nos. 42-82, 84-88, 90-94, 96, 98-100.

Accordingly, each Opt-In Plaintiff provided explicit authorization for Named Plaintiff

Montero to settle these specific FLSA wage and hour claims on their behalf. *See Stock v. Xerox

Corp.*, 516 F. Supp. 3d 308, 313 (W.D.N.Y. 2021) (procedural mechanism is sufficient when optin

plaintiffs signed a document authorizing the named Plaintiffs "to make decision on their

behalves, including with respect to any settlement of the lawsuit."); *Hood v. Uber Techs., Inc.*,

No. 16-CV-998, 2019 U.S. Dist. LEXIS 670, at *9-11 (M.D.N.C. Jan. 3, 2019) (settlements on

behalf of opt-in plaintiffs are acceptable when the opt-in plaintiffs provide "explicit

authorizations" for the named plaintiffs to settle the case on their behalf).

To be clear, there are no "absent class members" involved here who may potentially

unwittingly release any claims as part of the Settlement. On the contrary, every single Opt-In

Plaintiff as explicitly consented to be bound by any settlement and will receive the detailed

proposed Notice of Settlement attached as Exhibit B to the Settlement Agreement. LaClair

Decl., Ex. 1. At that time, each Opt-In Plaintiff will have an individual choice about whether to

accept the Settlement and negotiate their payment—or, alternatively, not accept the Settlement, not be bound by the Settlement terms, and retain their right to pursue their claims separately. *Id.* Notably, courts have approved settlements in other FLSA cases involving similar procedures without the need for an additional finding that final (as opposed to conditional) certification is necessary to effectuate the settlement. *See, e.g.*, *Mercado v. Metro. Transp. Auth.*, No. 20-CV-6533, 2023 U.S. Dist. LEXIS 115254, *6 (S.D.N.Y. July 5, 2023); *Feliciano v. Metro. Transp. Auth.*, No. 18-CV-26, 2020 U.S. Dist. LEXIS 80212 (S.D.N.Y. May 6, 2020).

In conclusion, the Settlement in this case meets the *Wolinsky* factors, follows the admonishments in *Cheeks*, and is otherwise fair, reasonable, and procedurally appropriate. Respectfully, Plaintiffs request—without opposition and with Defendants' consent—that the Court approve the Settlement.

**POINT II**

**THE COURT SHOULD ALSO APPROVE THE REQUESTED ATTORNEY'S FEES AND COSTS BECAUSE THEY TOO ARE FAIR AND REASONABLE**

At the outset, it should be noted that this is not a common-fund case whereby Plaintiffs' counsel is seeking a percentage of the total recovery. Rather, in this case, the parties negotiated the Plaintiffs' recovery and counsel's attorney's fees and costs separately from the recovery to Plaintiffs. LaClair Decl. ¶ 15. The agreed-to amount for attorney's fees and costs is fair and reasonable because it is only approximately 60% of the lodestar amount and, when compared to the recovery as a whole, only 21% of the total amount paid by Defendants as part of the Settlement. *Id.* ¶ 30.

14

As explained above, Plaintiffs' successfully negotiated a recovery of $206,865.06, which amounts to at least 75% of their maximum possible recovery.[6]  Separately, Plaintiffs proposed that, in addition to the $206,865.06 negotiated for Plaintiffs, Defendants reimburse Plaintiffs' counsel for attorney's fees and costs pursuant to the FLSA's mandatory fee-shifting provision. *Id.* ¶ 15; *see* 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

Since this matter first arose three years ago, Plaintiffs' counsel has expended more than 237 attorney hours working on this case, including approximately 175 partner hours and 62 associate hours.  LaClair Decl. ¶¶ 27-28.[7]  As an initial matter, it is worth noting that this is not an individual, run-of-the-mill FLSA action.  Rather, it is a collective action involving not just Named Plaintiff Montero but also 55 other Opt-In Plaintiffs who joined the suit as part of the conditional certification process required by the FLSA.  Courts have recognized that such cases are inherently complex from a procedural standpoint and further that "FLSA claims typically involve complex mixed questions of fact and law."  *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 743 (1981).  Counsel's work on this case has involved pre-suit fact investigation

---

[6] As noted above, Opt-In Plaintiffs with less than $600 in alleged liquidated damages will receive 100% of the same, and several others will receive a minimum payment of $150 despite a lack of records showing that they received late overtime payments.

[7] Notably, these hours are based on a report run on February 6, 2024, and thus do not capture additional attorney hours expended since that date.  *Id.*  In addition, these hours do not account for future attorney time that will be spent on this matter administering the Settlement. *Id.*; *see Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at *9 (E.D.N.Y. Jan. 20, 2010) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

and legal research, drafting of the pleadings, negotiation of tolling agreements to protect Plaintiffs' interests, discovery, the conditional certification process, the collective notice/opt-in process, analysis of voluminous time and pay records, settlement negotiations, and the settlement approval process, among other efforts.  LaClair Decl. ¶¶ 4-16, 26-27.

Plaintiffs' counsel's hourly rates for partners and associates for employment litigation matters such as this one are $425 and $275, respectively.  *Id.* ¶ 29.  These hourly rates are reasonable in light of counsel's qualifications and the complex nature of this action.  *Id.* ¶¶ 22-25.  Indeed, similar or even higher rates are commonly approved in this District.  *See, e.g.*, *Dougherty v. 2With Deli Corp.*, No. 23-CV-03496 (ER), 2023 U.S. Dist. LEXIS 215998, *6 (S.D.N.Y. Dec. 5, 2023) (finding partner rates of $500/hour and associate rates of $300/hour reasonable for purposes of lodestar analysis in FLSA settlement); *Mercado v. Metro. Transp. Auth.*, No. 20-CV-6533 (AT), 2023 U.S. Dist. LEXIS 84303, *10 (S.D.N.Y. May 15, 2023) (finding partner rates of $500-550/hour and associate rates of $350-400/hour reasonable for purposes of lodestar analysis in FLSA settlement).

Based on the hours expended and counsel's hourly rates, the lodestar amount is approximately than $91,000.  LaClair Decl. ¶ 30.  However, in order to reach a settlement that is highly favorable to the Plaintiffs, counsel has agreed to the substantially reduced amount of $55,000 for attorney's fees and costs.  *Id.*, Ex. 1 ¶ 2.  This amounts to only 60% of the lodestar amount.  *Id.*  Moreover, while this is not a percentage-of-the-fund case, the requested fee is also more than reasonable when compared to the total amount paid by Defendants as part of the Settlement.  *Id.*  Specifically, the requested fee of $55,000 amounts to only 21% of the $261,865.06 that Defendants have agreed to pay to settle this action.  *Id.*  This is substantially

less than the one-third commonly found to be reasonable and awarded in percentage-of-the-fund cases.  *See, e.g.*, *Lazo v. Kim's Nails at York Ave. Inc.*, No. 17-CV-3302 (AJN), 2018 U.S. Dist. LEXIS 218107 (S.D.N.Y. Jan. 2, 2019) (noting that courts in this District routinely award one-third of a settlement fund as a reasonable fee in FLSA cases).

In sum, Plaintiffs respectfully submit that the requested fee is fair and reasonable.

## CONCLUSION

For the reasons and authorities set forth above, Plaintiffs respectfully request that the Court grant its unopposed motion for approval of the Settlement consistent with the proposed order submitted herewith.

DATE:  February 29, 2024

BLITMAN & KING LLP

 s/ Brian J. LaClair
Brian J. LaClair (BL3158)
*Attorneys for Plaintiffs*
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204
(315) 422-7111
bjlaclair@bklawyers.com